IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ERVING and NANCY WILFERD,<br><br>Appellees,<br><br><br>vs.<br><br>JEREMY JAY WARDLE,<br><br>Appellant. | ORDER AFFIRMING<br>BANKRUPTCY COURT DECISION<br><br><br><br>Case No. 2:06-CV-01007 |

Jeremy Jay Wardle has appealed the decision of a bankruptcy court denying him

discharge in bankruptcy.  The bankruptcy court determined that more than one year before Mr.

Wardle filed for bankruptcy, he had concealed an asset.  Specifically, he transferred the title of

his house to his wife, in anticipation of an unfavorable judgment against him in a pending

lawsuit.  The bankruptcy court found that this concealment of Mr. Wardle's interest in the house

continued to the time of the bankruptcy and that Mr. Wardle had the intent to hinder, defraud, or

delay creditors by continuing this concealment.  On these grounds, the court denied discharge.

Factually, the court is unable to fully review the bankruptcy court's findings because the parties

presented an incomplete record.  But the limited record presented supports the bankruptcy court's

factual determinations.  Legally, the court affirms the bankruptcy court's application of the

continuing concealment doctrine.  The court finds oral argument to be unnecessary, as the record

is sufficiently detailed and clear.

## BACKGROUND

A number of years ago, Mr. Wardle bought two businesses from Erving and Nancy Wilferd.  According to a promissory note dated August 31, 2000, Mr. Wardle owed the Wilferds $1,240,000, in connection with these purchases.  Eventually, Mr. Wardle became delinquent in his payments to the Wilferds.  On January 24, 2003, the Wilferds filed a complaint in state court against Mr. Wardle and his father, Hal Wardle.  The Wilferds sought to recover amounts due and owing on the promissory note.  Then, on February 3, 2003, the Wilferds filed a complaint against two business the Wardles were involved with — Mountain States Trailer & Equipment Sales, Inc., and Storage On Site, Inc. — attempting to recover collateral securing Mr. Wardle's obligation under the promissory note.  Both actions were filed in Utah State courts, and the actions were ultimately consolidated.

While this state litigation was pending against him, Mr. Wardle transferred ownership of his residence to his wife, Hollie Wardle, via a quit claim deed.  Mr. Wardle executed the quit claim deed on March 4, 2003, and recorded it with the county recorder's office on March 5, 2003.  Around July 15, 2004, Ms. Wardle used this residence to secure a loan from Wells Fargo Bank in the amount of $118,200.  Ms. Wardle then used the loan proceeds to purchase cabin property in Duchesne County.  She purchased the property in association with Brett Peterson — each party paid half of the purchase price.  Less than six months later, in December 2004, Ms. Wardle liquidated her interest in the property, receiving approximately $127,000.  Also in 2004, Ms. Wardle and Mr. Peterson purchased property in Pleasant Grove, Utah.  After the property had been developed, they sold it for a profit — Ms. Wardle realized a $32,000 profit from the

sale.  Ms. Wardle converted the proceeds from both the Duchesne County and Pleasant Grove properties into cash.  Mr. and Ms. Wardle kept the cash in their basement, and each had equal control over it.  The Wardles claim to have spent all of the cash proceeds on living expenses.

On June 23, 2004, the day before the consolidated state court litigation was scheduled for trial, Mr. Wardle filed for bankruptcy, staying the trial.  Judge Boulden dismissed Mr. Wardle's petition, with prejudice, on July 16, 2004.  She dismissed the petition, in part, because Mr. Wardle failed to file his statement of financial affairs and to attend a creditors' meeting.

The Wilferds' state court actions progressed, and in April 2005, the state court ultimately entered judgment in favor of the Wilferds and against Mr. Wardle.  Apparently, the court found Mr. Wardle had misappropriated over one-hundred thousand dollars and had defaulted on the promissory note.

On April 12, 2005, Mr. Wardle voluntarily filed for bankruptcy under Chapter 7.  With this filing, Mr. Wardle submitted the necessary financial statements and schedules.  On the bankruptcy schedules, Mr. Wardle indicated that he had an equitable interest in a personal residence with Ms. Wardle, but he never indicated he had once possessed an ownership interest in the residence which he later transferred to Ms. Wardle.  The Wilferds filed an adversary proceeding against Mr. Wardle on July 8, 2005, seeking a denial of his bankruptcy discharge due, in large part, to Mr. Wardle's transfer of his primary residence.  The Wilferds sought denial of discharge pursuant to 11 U.S.C. § 727(a)(2), (a)(4)(A), (a)(3), and (a)(5).

Judge William T. Thurman conducted a bench trial on this matter on September 20, 2006. On October 20, 2006, the bankruptcy court issued a judgment against Mr. Wardle and for the Wilferds on their claim to deny Mr. Wardle discharge pursuant to § 727 (a)(2).  The court

dismissed the Wilferds' other causes of action against Mr. Wardle.  Mr. Wardle filed a notice of

appeal and elected that a United States District Court, rather than a bankruptcy panel, hear his

appeal.  As a side note, the court received an initial brief from Mr. Wardle, but received no reply

brief — and the time for filing a reply has long expired.  The Wilferds filed a notice of cross-

appeal shortly after Mr. Wardle filed his notice of appeal.

**STANDARD OF REVIEW**

"In reviewing an order of the bankruptcy court, an appellate court reviews the factual

determinations of the bankruptcy court under the clearly erroneous standard, and reviews the

bankruptcy court's construction of [a statute] *de novo*."[1]  Accordingly, this court reviews the

bankruptcy court's application of the continuing concealment doctrine in relation to 11 U.S.C. §

727 *de novo*, as this involves the construction and application of the bankruptcy code.[2]  However,

the court reviews the bankruptcy court's factual inquiry into Mr. Wardle's intent under a "clearly

erroneous" standard.[3]  Under a clearly erroneous standard, the court will only overturn the

bankruptcy court's findings if the court has "a definite and firm conviction that a mistake has

been committed."[4]

**DISCUSSION**

Mr. Wardle challenges the bankruptcy court's decision on three grounds.  First, he claims

---

[1] *Taylor v. I.R.S.*, 69 F.3d 411, 415 (10th Cir. 1995).

[2] *Rushton v. State Bank of S. Utah (In re Gledhill)*, 164 F.3d 1338, 1340 (10th Cir. 1999).

[3] *See Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir. 1997).

[4] *The Cadle Co v. Mac Stewart (In re Mac Stewart)*, 263 B.R. 608, 611 (10th Cir. )
(citation and internal quotation omitted); *see also Federal Deposit Ins. Corp. v. Hamilton*, 122
F.3d 854, 860 (10th Cir. 1997).

the bankruptcy court erred by applying the continuing concealment doctrine in this case, and even if the court properly applied the doctrine, factually, Mr. Wardle's situation falls outside of doctrine's reach.  Mr. Wardle then claims the bankruptcy court erred in its factual determination of Mr. Wardle's intent to hinder, delay, or defraud creditors.  Finally, Mr. Wardle argues that, in light of these errors, the bankruptcy court erred by denying Mr. Wardle a discharge pursuant to 11 U.S.C. § 727.

Section 727(a)(2) requires courts to discharge the debts of a debtor unless:

the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed —
(A) property of the debtor, within one year before the date of the filing of the petition; or
(B) property of the estate, after the date of the filing of the petition;[5]

An inquiry under § 727(a), therefore, consists of two components: a disposition of property, like concealment or transfer, and a subjective intent by the debtor to hinder, delay, or defraud a creditor.  "Proof of fraudulent concealment, in order to bar discharge, need be shown only be a preponderance of the evidence."[6]

The court finds that the bankruptcy court properly applied the continuing concealment doctrine in this case.  And although the lack of a complete record has made a complete factual review of the bankruptcy court's decision impossible, the record provided sufficiently supports the bankruptcy court's factual determinations.

1.      *Adoption of the Continuing Concealment Doctrine*

---

[5] 11 U.S.C. § 727(a)(2).

[6] *Famers Coop. Ass'n v. Strunk*, 671 F.2d 391, 395 (10th Cir. 1982).

Mr. Wardle objects to the bankruptcy court's use of the continuing concealment doctrine, arguing that it conflicts with the plain language of § 727.  But this court finds the bankruptcy court's decision to be legally correct.

Section 727 provides for an exception to the granting of a discharge when a debtor has concealed property or allowed it to be concealed within one year before the debtor files for bankruptcy.  Mr. Wardle argues "the language [of § 727] clearly references transactions that occur within one year of the debtor's bankruptcy petition"[7] and no others.  What Mr. Wardle misses is that property concealed before this one-year time frame fits within the plain language of § 727 if it is still being concealed within one year of the petition.  Thus, the continuing concealment doctrine applies under § 727 "as long as the debtor allowed the property to remain concealed into the critical year," even if the concealment itself occurred before the one-year period.[8]  This doctrine "merely recognizes that a failure to reveal property previously concealed can . . . properly be considered culpable conduct during the year before bankruptcy."[9]  Although the Tenth Circuit has not addressed the continuing concealment doctrine under § 727, it is a well-settled approach adopted by many circuit courts.[10]  Other bankruptcy courts within the Tenth

---

[7] Appellant App. 15.

[8] *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993).

[9] *Id.* at 1532.

[10] *See, e.g.*, *Keeney v. Smith (In re Keeney)*, 227 F.3d 679 (6th Cir. 2000); *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237 (9th Cir. 1997); *Rozen v. Bezner*, 996 F.2d 1527 (3d Cir. 1993); *Thibodeaux v. Olivier (In re Olivier)*, 819 F.2d 550 (5th Cir. 1987); *Bank of Miami v. Espino (In re Espino)*, 806 F.2d 1001 (11th Cir. 1986); *First Federated Life Ins. Co. v. Martin (In re Martin)*, 698 F.2d 883 (7th Cir. 1983).

Circuit have utilized this approach as well.[11]  Therefore, this court finds that the bankruptcy

court's decision to apply the continuing concealment doctrine to § 727 was legally correct.

2.     *Factual Determinations*

In addition to arguing the bankruptcy court erroneously adopted the continuing

concealment doctrine, Mr. Wardle argues the doctrine does not apply to the facts of this case and

that the bankruptcy court erred in its determination of Mr. Wardle's intent to hinder, delay, or

defraud creditors.  But Mr. Wardle's factual challenges fail at the outset, as he has presented an

incomplete record on appeal.  Mr. Wardle presented the court with some depositions and

documentary evidence, but only a small portion of the trial record — the bankruptcy court's

rulings.  This leaves the court will little basis for comprehensively reviewing — let alone

overturning — the bankruptcy court's decision.

Without the trial transcript, the court cannot know the content of the witnesses'

testimony, or whether any such testimony conflicted with prior testimony (i.e., whether it was

supported by or contradicted by deposition testimony).  This type of incomplete record "raises an

effective barrier to informed, substantive appellate review."[12]  "When a trial transcript is not

designated a part of the record on appeal, an appellate court cannot review the [lower] court's

factual findings and must accept them as correct."[13]  In short, without the trial transcript, it is

impossible for the court to find the bankruptcy court's decision to be clearly erroneous because

---

[11] *See, e.g.*, *Teilhaber Mfg. Corp. v. Hodge (In re Hodge)*, 92 B.R. 919 (Bankr. D. Kan. 1988).

[12] *McGinnis v. Gustafson*, 978 F.2d 1199, 1201 (10th Cir. 1992).

[13] *Trujillo v. Grand Junction Reg'l Ctr.*, 928 F.2d 973, 976 (10th Cir. 1991) (citations omitted).

the evidence presented at trial may undermine the evidence presented in the record to this court.

However, if the court decided the case based on the limited record presented on appeal, it would affirm the bankruptcy court's factual determinations, on the following grounds.

(A)     Continuing Concealment

Mr. Wardle argues his factual situation falls outside the reach of the continuing concealment doctrine.  The facts presented to this court, however, support the bankruptcy court's determination.

"Concealing property for purposes of section 727 (a)(2)(A) can be accomplished by a transfer of title coupled with the retention of the benefits of ownership,"[14] among other ways. This same retention of a beneficial interest in the property is evidence of *continuing* concealment.[15]  In *Thibodeaux v. Olivier,*[16] for example, the Fifth Circuit affirmed the decisions of a district court and a bankruptcy court as to the applicability of the continuing concealment doctrine.  One debtor in *Olivier* had been involved in a car accident, leading to the amputation of the accident victim's leg.[17]  Just two days after the accident, the debtors transferred the title of their home to one of their mothers.[18]  The mother paid $15,000 in cash for the home, but the debtors returned this full amount to her a few days after the sale.[19]  Even after the transfer, the

---

[14] *Olivier*, 819 F.3d at 553.

[15] *Hodge*, 92 B.R. at 922.

[16] 819 F.2d 550 (5th Cir. 1987).

[17] *Id.* at 551.

[18] *Id.*

[19] *Id.*

debtors continued to live in the house, maintain it, and pay the mortgage on it.[20]  The debtors paid

no rent in exchange for the privilege of living there.[21]  About one month after the accident, the

other party to the accident sued the debtors.  Ultimately, he obtained a $103,544 judgment

against one of the debtors.[22]  About six years later, the debtors filed for bankruptcy under Chapter

7.

        The Fifth Circuit found there to be "ample evidence supporting the conclusion that the

transfer of the house was motivated by the realization of appellants and [the mother] that a

personal injury suit based on the accident and an adverse judgment were likely."[23]  The other

party to the accident, said the court, became a creditor at the time the claim arose — the time of

the accident.[24]  The court "decline[d] to hold that purposefully concealing property in anticipation

of a known and imminent creditor's lawsuit should somehow qualitatively be different from

concealing property after the judgment on that claim becomes final."[25]

        Similar to the parties in *Olivier*, Mr. Wardle transferred ownership of his home to his

wife when he knew a lawsuit was pending against him.  Just one month after the Wilferds sued

Mr. Wardle in state court, Mr. Wardle signed the quit claim deed.  The bankruptcy court was

justified in viewing this transfer as a concealment in anticipation of a known creditor's lawsuit.

---

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.* at 552.

[24] *Id.* at 553.

[25] *Id.*

Mr. Wardle's own deposition reveals this purpose somewhat:

> Q.   You had indicated that you assigned your title in the home to [your wife.]
> A.   Yes.
> Q.   What consideration did you get for that?
> A.   What do you mean by consideration?
> Q.   Did you get any money from her?
> A.   A $10 transaction.
> Q.   All right.  And so why did you do that?
> A.   Just asset protection.
> Q.   You wanted to protect the home from the Wilferds?
> A.   From the Wilferds, from anybody.[26]

Although Mr. Wardle transferred his home more than two years prior to filing bankruptcy the second time, the transfer occurred barely more than thirteen months before he initially filed for bankruptcy.  Just as in *Olivier*, after the transfer, Mr. Wardle retained the benefits and burdens of ownership.  He continued to live in and maintain the residence.  Ms. Wardle had not earned an income since 1998, so Mr. Wardle continued to pay the mortgage with his income. Indeed, nothing appeared to have changed except for the titled owner.  The bankruptcy court correctly found, therefore, that although Mr. Wardle represented that he had transferred away his real interest in the property, he retained a secret interest — revealed by his retention of the benefits of ownership and control.

Mr. Wardle argues that because he recorded his property transfer, the continuing concealment doctrine does not apply.  This misstates the point.  Even if the court assumed the recording gave creditors some kind of constructive notice of transfer, it did not give creditors notice of Mr. Wardle's continuing beneficial interest in the property.  Mr. Wardle's claim that the recording prevented a concealment would only be valid if he had somehow provided notice of his

---

[26] Appellant App. 250.

continuing interest in the property — as well as notice of the transfer — to his creditors.  This did not happen.  If anything, public recording of the quit claim deed may have lead creditors to think Mr. Wardle had disclaimed any and all interest in the property, not that he retained beneficial interest.  Of course, as with all of its factual review, the court's review of this point is limited because Mr. Wardle failed to provide a trial transcript revealing the context surrounding the transfer.

Mr. Wardle also claims that his bankruptcy disclosure indicating he transferred the property and continued to maintain an equitable interest in it proves he did not conceal the property.  Again, the trial transcript regarding this issue was not presented to this court.  But no evidence before the court indicates that Mr. Wardle disclosed the transfer of the property when he filed bankruptcy.  He disclosed an equitable interest in the residence but never wholly clarified what interest he held.  Based on this information alone, a creditor or trustee would have had no basis for knowing Mr. Wardle had transferred his equity to his wife — or what benefits of ownership, if any, he retained.  Any disclosure by Mr. Wardle was insufficient because he failed to disclose the transfer and the nature and extent of his beneficial interest in and use of the property.  For instance, Mr. Wardle failed to disclose the other benefits he had received from the property since its transfer.  Ms. Wardle used the home's equity to obtain a loan, buy a cabin, then sell it for a profit.  Mr. Wardle failed to disclose that he had an equitable interest in the cabin or in the $127,000 proceeds from it.  Yet these assets sprang directly from the house.  In sum, it was not clearly erroneous for the bankruptcy court to find that Mr. Wardle's limited reference to equity in the home on his bankruptcy schedule failed to cure the continued concealment of the asset.

(B)      Intent to Defraud

Mr. Wardle also contends that the bankruptcy court erred in its determination that he had an actual intent to defraud, delay, or hinder his creditors.  Based on the limited record before it, the court finds the bankruptcy court's determination on this point to be well-supported.

To deny a discharge under § 727, a court must find the debtor had an actual intent to defraud creditors.[27]  "Since debtors seldom testify that they have had an intent to defraud creditors, a finding of actual intent must be based on circumstantial evidence or on inferences drawn from a course of conduct."[28]  Specific indicia of fraud include the concealment of pre-bankruptcy conversions, gratuitous property transfers, continued use of the transferred property, transfer of the property to family members, the debtor's use of credit to buy exempt property, property conversion after a large judgment against the debtor, "sharp dealing" by the debtor before bankruptcy, and conversions leaving the debtor insolvent.[29]  In particular, the "'retention of the use of transferred property very strongly indicates a fraudulent motive underlying the transfer.'"[30]

Many of these fraud indicators are present in Mr. Wardle's conduct.  First, Mr. Wardle transferred title to his wife — a family member.  He made this transfer in exchange for $10 — a nominal amount that was never even paid.  Although Mr. Wardle made the transfer before any

---

[27] *Marine Midland Bus. Loan, Inc. v. Carey (In re Carey)*, 938 F.2d 1073, 1077 (10th Cir. 1991).

[28] *Hodge*, 92 B.R. at 922.

[29] *Carey*, 938 F.2d at 1077 & n.4.

[30] *In re Olivier*, 819 F.2d at 553 (quoting *EFA Acceptance Corp. v. Cadarette (In re Cadarette)*, 601 F.2d 648, 651 (2d Cir. 1979)).

judgment had been entered against him in the state court case, he made it after the case had been filed against him.  And Mr. Wardle admitted in his deposition testimony that he transferred the home to protect it from the Wilferds or anyone.  From this statement alone, it is reasonable to believe that Mr. Wardle was fully aware that his interest in the home might have been subject to seizure by the Wilferds or other creditors if he lost the suit against him, and that he transferred the home to avoid such a result.

Also critical to a finding of intent to hinder, delay, or defraud creditors under § 727 is a finding that Mr. Wardle intended to continue to conceal his property transfer into the year before he filed bankruptcy.  As discussed before, the evidence presented to the court supports this finding.  There is no evidence Mr. Wardle revealed the ful nature or extent of his interest in the residence at any time.  Mr. Wardle even participated in literally hiding a related physical asset — the proceeds from the sale of property that had been purchased using a home equity loan.  Rather than deposit the funds into a bank, the Wardles decided to keep the proceeds from the property sale in cash.  Ms. Wardle testified that the Wardles kept this money (over $100,000 cash) in the basement of their home in order to keep people from garnishing the money.  Both Mr. and Ms. Wardle testified to Mr. Wardle's access to and use of this cash.  This evidence of literal hiding of assets supports a finding that Mr. Wardle had a general intent to defraud creditors.  Considering the circumstances surrounding the gratuitous transfer of the house to his wife, it was not clear error for the bankruptcy court to determine the same sort of intent was present specifically with regard to the house.  Indeed, in light of Ms. Wardle's testimony, it is difficult to imagine how Mr. Wardle can validly claim his intent was not to continue the concealment.

Mr. Wardle argues the recording of the transfer in the county clerk's office proves he had

no intent to defraud, delay, or hinder his creditors by the transfer.  But even if this constituted

constructive notice of the transfer, it did not constitute notice of Mr. Wardle's continued

beneficial interest in the house.  If Mr. Wardle had not intended to defraud his creditors, he could

have fully disclosed the transfer and his retained interest on his bankruptcy schedule.  And even

if the recording of the property weighed in favor of a finding of no intent, the bankruptcy court

did not clearly err by finding other overriding, contrary factors demonstrated an intent by Mr.

Wardle to "hinder, delay, or defraud" his creditors weighed heavier.  In short, circumstances are

sufficient to find that Mr. Wardle's transfer of the house and concealment of his interest in it was

meant to hinder, delay, or defraud creditors.

3.      *The Wilferds' Cross-Appeal*

        The Wilferds filed a cross-appeal in this matter, but failed to comply with filing rules.

For a cross-appeal to be proper, the cross-appellant must "file and serve a statement of the issues

to be presented on the cross appeal and a designation of additional items to be included in the

record" within ten days after service of the appellant's statement.[31]  The Wilferds filed no such

statement in this case.  In addition, the rules require an appellee to include any "issues and

argument pertinent to the cross appeal, denominated as such" in the response to the appellant's

brief.[32]  Again, the Wilferds failed to comply with this requirement.

        The court, therefore, denies the Wilferds' cross-appeal.

## CONCLUSION

        The court affirms the bankruptcy court's decision in whole.  The bankruptcy's court's

---

[31] Fed. R. Bankr. P. 8006.

[32] Fed. R. Bankr. P. 8009.

application of the continuing concealment doctrine was proper.  And although the court is unable

to comprehensively review the factual record, the portion of the record presented to this court

does not reveal clear error by the bankruptcy court.  The clerk's office is directed to enter

judgment accordingly and to close the case.

DATED this 1st day of February, 2007.

BY THE COURT:

Paul G. Cassell
United States District Judge